UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION


KIMBERLY MICHELE KIRKLAND,

     Plaintiff,                                                    CASE NO.:

vs.

EQUITI US, LLC.,
d/b/a EQUITI

     Defendant.
_____/


## COMPLAINT

COMES NOW the Plaintiff, KIMBERLY MICHELE KIRKLAND (hereinafter "KIRKLAND"), by and through the undersigned Counsel, and sues the Defendant, EQUITI US, LLC (hereinafter "EQUITI"), and alleges the following:

### JURISDICTION AND VENUE

1.      This is a civil action with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2.      This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the following: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; and the Age Discrimination in Employment Act, 29 U.S.C. §§ 12201 et seq.  This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3.      Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions relevant giving rise to this claim arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

4.      All conditions precedent to the maintenance of this action have been met.

5.      On or about December 21, 2018, Plaintiff, KIRKLAND, timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "A."**

6.      More than 180 days have passed since KIRKLAND filed her Charge of Discrimination with the Palm Beach County OEO and the EEOC.

7.      On or about September 30, 2019, the EEOC issued a Notice of Right to Sue, acknowledging that more than 180 days had passed since KIRKLAND's filing of her Charge.  This Complaint is being filed within ninety (90) days of receipt of that notice.  A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**

## PARTIES

8.      Plaintiff, KIRKLAND is an individual who resided in Palm Beach County, Florida, during the time of her employment with EQUITI.  At all times herein mentioned, KIRKLAND was employed by EQUITI located at 11300 U.S. Highway 1, Suite 200, Palm Beach Gardens, FL 33408.

9.      KIRKLAND was and is a member of a group protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII), the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621-634 (ADEA), and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01

(FCRA)'s prohibitions against age discrimination, gender discrimination, hostile work environment, and retaliation namely:

    a.  She is a female

    b.  She is fifty-two years of age.

    c.  She was subjected to a hostile work environment as a result her age and gender

    d.  She suffered an adverse employment action shortly after making a formal complaint regarding the discriminatory treatment she was experiencing in the workplace and EQUITI's unlawful business practices.

10.    EQUITI is duly authorized and licensed to do business in Palm Beach County, Florida.  At all times material, EQUITI was and is engaged in the business of Forex (Foreign Exchange) Brokerage Services with more than fifteen (15) employees.  As such, EQUITI is an "employer" as defined by the Florida Civil Rights Act of 1992.

## GENERAL ALLEGATIONS

11.    Ms. Kirkland was employed as an accountant by EQUITI on a continuous basis from January 2, 2017 through December 4, 2018.

12.    From the beginning of her employment with EQUITI, Ms. Kirkland was responsible for keeping records of the company's local finances, including handling accounts payable and accounts receivable and keeping track of the local budget. Ms. Kirkland's supervisors were Gary Dennison, the Manager of the Palm Beach Gardens office, and Gregor Schnuppe, the CFO based in London, United Kingdom.

13.    By all accounts, Ms. Kirkland excelled at her position, having never received any disciplinary warnings throughout the almost two (2) years that she was employed by EQUITI.

14.     However, beginning in January 2018, and continuing through the end of her employment with EQUITI, KIRKLAND noticed a practice of discrimination based on her age, and gender by EQUITI.

15.     In the spring of 2017, word began to spread that Divisa US, LLC, (now EQUITI) would be undergoing a merger of some kind, but provided little to no detail of the event to the staff, or any information regarding new shareholders or a change in ownership. The new company structure was considered to be confidential and kept secret.

16.     In January 2018, KIRKLAND learned the company had retained use of the same Federal Tax ID number (i.e "FEIN") belonging to the prior owner/sole shareholder. The company had originally been formed and filed as a sole member LLC.

17.     Upon becoming aware that the Tax ID ownership information had not been updated following the merger from a sole member LLC to a company with foreign shareholders, KIRKLAND sent email correspondence to Mr. Schnuppe (the new CFO), and Mr. Dennison noting the need to file paperwork reporting the change in ownership structure.

18.     Upon realizing and/or being informed that nothing had been done to update the corporate filings, KIRKLAND again emailed her supervisors and, in addition, emailed the company's in-house legal counsel, Jack Seaman, based out of London, on both May 22nd, 2018 and June 4th, 2018.

19.     On August 23, 2018, KIRKLAND had a mid-year job review with Mr. Dennison in which she was advised that nothing had been done to address these tax reporting and filing issues. Mr. Dennison belittled KIRKLAND's concerns, but following the meeting it was requested that she forward the name of a local CPA to assist with the filings. Accordingly, that same day, KIRKLAND sent an email to Mr. Schnuppe and Mr. Dennison with the name and contact

information of a local CPA and local tax attorney, both of which who had experience in international matters. Rather, than thank KIRKLAND for her efforts to ensure compliance, and despite KIRKLAND not having any connection to the individuals she recommended, Mr. Dennison falsely accused KIRKLAND of "feeding business to her friends."

20.     Notwithstanding this additional information, no steps were taken at this time to ensure compliance with U.S. tax laws.

21.     On or around September 30th, KIRKLAND emailed Lutfi Shahin, the Head Global CFO based in Dubai, asking for direction as to how to proceed on the matter of the US Tax Returns which had not been filed. KIRKLAND explained she had been sending emails, and had explained and re-explained the situation to Gary Dennison to no avail. She further discussed the necessity of the returns as required by the Department of Immigration on behalf of certain employees (on Visas) and that the lack thereof could trigger an IRS audit as the company was in receipt of numerous foreign wire transfers. KIRKLAND requested specific direction as to what to do next. Notwithstanding, and yet again, no steps were taken at this time to ensure compliance with U.S. tax laws.

22.     KIRKLAND became aware that the monies wired monthly to the three U.S. Managers, Jack Pieron, James Mason, and Gary Dennison, were in fact representative of a monthly employee salary and subject to appropriate payroll taxes and W-2 reporting. The company had been paying the three as Independent Contractors and filed such on Form 1099. KIRKLAND was instructed to classify the payments on the General Ledger as "Member Guaranteed Payments". This classification continued for the duration of her employment. Mr. Dennison had previously described the three as company "Founders", suggesting an ownership interest, when they were in fact employees of EQUITI, formerly Divisa US LLC. Accordingly, on October 5, 2018,

KIRKLAND sent email correspondence to the Global Head of Human Resources, Mr. Nigel Holmes, and the new global CFO, Rick Fulton, who are both based out of the London office, notifying them of IRS guidelines and potential liability/penalties of misclassifying an employee as a 1099 worker.

23.     Additionally, KIRKLAND raised concerns over the HR initiated disqualification of her employee benefits, specifically a 401K retirement package as she was labeled "ineligible" in the HRIS system when she was, in fact, eligible.

24.     Further investigation revealed that a Human Resources representative, Emily Phillips had misclassified KIRKLAND as a part-time employee, such that she would never qualify for a 401K package.

25.     KIRKLAND sent emails to Mr. Holmes requesting that this information be changed.

26.     On November 2, 2018, Ms. Kirkland again emailed with CFO Mr. Fulton regarding the company's failure to file tax returns.

27.     KIRKLAND discovered that EQUITI, under its former name Divisa US LLC, had drafted tax returns for tax years 2015 through 2017 showing approximately $74,000.00 due in corporate taxes but that these returns were never filed, and the taxes went unpaid.

28.     On November 16, 2018, KIRKLAND had an in-person meeting with Mr. Holmes, who traveled to the U.S. office on business. She again raised concerns about the tax documents, the misclassification of management-level employees, and the constant harassment she was experiencing from her immediate supervisor Mr. Dennison.

29.     Again, nothing was done to remedy the situation.

30.     Additionally, from the inception of KIRKLAND's employment with EQUITI, KIRKLAND was subjected to various incidents of age and gender discrimination.

31.     As a fifty-two-year old woman, KIRKLAND was the oldest of all the employees at her Palm Beach Gardens office and was often reminded of same by her immediate supervisor, Mr. Dennison, and the Human Resources representative at her office, Emily Phillips.

32.     Mr. Dennison stated that he believed the company needed to move in a younger direction while speaking to KIRKLAND about the tax illegalities that she uncovered.

33.     In fact, EQUITI never hired any women in senior management roles, they only hired men for these positions and the male executives would often schedule meetings at gentlemen's clubs in Palm Beach County.

34.     KIRKLAND felt uncomfortable with the attitude of superiority that these male executives showed toward the female employees.

35.     Specifically, KIRKLAND witnessed various inappropriate interactions involving these male executives and the young, female assistants that would be hired to work at the front desk.

36.     KIRKLAND felt threatened by Mr. Dennison, who quickly made it a habit to enter her office unannounced, for reasons not explained, and close the door without her permission.

37.     The discomfort was so great that on September 29, 2018, KIRKLAND made a formal complaint regarding same to the Global Head of Human Resources, Mr. Nigel Holmes, who is based out of the London office.

38.     In her email to Mr. Holmes, KIRKLAND described how Mr. Dennison made her feel uncomfortable and how he would often enter her office unannounced.

39.     KIRKLAND also reported to Mr. Holmes that Mr. Dennison often smelled of alcohol while at work and at all hours of the workday.

40.     In fact, because the company and its management team did nothing in response to her complaint, KIRKLAND began positioning herself within view of a surveillance camera that was located in the hallway leading to her office, such that the camera could capture footage of her inside her office and also capture the moments when Mr. Dennison approached her.

41.     On November 16, 2018, KIRKLAND communicated with Mr. Holmes yet again regarding the hostile work environment she was experiencing daily.  She additionally described instances where she felt harassed by Mr. Dennison and described witnessing Mr. Dennison's successful efforts of recruiting the local Human Resources representative, Ms. Phillips, into joining in with the harassment, hostility and animosity.

42.     Even after her various complaints regarding harassment and discrimination, EQUITI and its management personnel did nothing to address the situation.

43.     Additionally, employees who were male and younger were treated favorably at the office. As just one example, KIRKLAND was denied the opportunity to work from home following a concussion injury from a fall. Other employees who were outside KIRKLAND's subject class (both with regards to age and gender), regularly and routinely worked from home without issue. One full time male employee in his twenties even permanently worked from his home in Seattle.

44.     In the most egregious fashion, KIRKLAND suffered an adverse employment action following the reporting and uncovering irregularities in the company's U.S. Federal Tax Filings, unpaid corporate taxes totaling at least $74,000.00, improper 1099 payments to employees, and

following her written and verbal complaints for harassment and hostile work environment resulting from age and gender discrimination.

45.     Specifically, on December 4, 2018, KIRKLAND was called into a meeting with Mr. Dennison, Ms. Phillips, and Mr. Jack Pieron, where she was fired from her employment after almost two (2) years of dedicated work to the company.

46.     When terminated, KIRKLAND was told that the company was "going in a different direction".

## COUNT I – RETALIATION IN VIOLATION OF THE FLORIDA PRIVATE WHISTLEBLOWER ACT

47.     Plaintiff KIRKLAND incorporates the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

48.     At all times material, KIRKLAND was a protected employee under the Florida Private Whistleblower Act ("FPWA").

49.     EQUITI was KIRKLAND's "employer" as defined by the FPWA.

50.     Under the FPWA, "an employer may not take any retaliatory personnel action against an employee because the employee has . . . disclosed or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation."  Fla. Stat. § 448.102(1).

51.     Additionally, under the FPWA, "an employer may not take any retaliatory personnel action against an employee because the employee has . . . objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  Fla. Stat. § 448.102(3).

52.     KIRKLAND's termination was retaliation for her activities protected by the FPWA, including consistently reporting about illegalities in the workplace to her supervisor, reporting under safety and hostile work environment in the workplace and then up the chain of command.

53.     KIRKLANDS's termination violated the FPWA, including Florida Statute §§ 448.102(1) and (3).

54.     KIRKLAND suffered damages as a result of EQUITI's violations of the FPWA, to which KIRKLAND is entitled to legal and injunctive relief.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT  II– AGE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

55.     Plaintiff, KIRKLAND incorporates the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

56.     The FCRA, Fla. Stat. Chapter 760.10(1)(a), reads in applicable part, as follows: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

57.     EQUITI is an "employer" as defined by § 760.09(7) of the Florida Statutes.

58.     KIRKLAND is a fifty-two-year-old female who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

59.     KIRKLAND was the oldest of all the employees at her Palm Beach Gardens office and was often reminded of same by her immediate supervisor, Mr. Dennison and, the Human Resources representative at her office, Emily Phillips.

60.     The disparity in age was addressed by Mr. Dennison when he stated that he believed the company needed to move in a younger direction while speaking to Ms. Kirkland about the tax illegalities that she uncovered.

61.     During the course of her employment with EQUITI, KIRKLAND complained about the unfair treatment and the use of derogatory terms against her based on her age, as detailed above in this Complaint.

62.     EQUITI's unlawful employment practices, complained of above, deprived KIKRLAND of her statutory rights under the FCRA.

63.     EQUITI and its employees/agents discriminated against KIRKLAND with respect to her employment because of her age by subjecting KIRKLAND to an insulting work environment, and by terminating her based on her age.

64.     EQUITI's actions are violations of the FCRA because EQUITI discriminated against KIRKLAND in the loss of compensation, terms and conditions and/or privileges of KIRKLAND's employment and thereby damaged her.

65.     As a direct and proximate result of EQUITI's conduct and its employees' actions, KIRKLAND has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, and life insurance all of which she would have continued to receive had she not been unlawfully terminated.

66.     What is more, the unlawful employment practices complained of above committed by EQUITI were willful, wanton, intentional and with malice or with reckless indifference to KIRKLAND's statutorily protected rights, such that KIRKLAND is entitled to punitive damages.

67.     KIRKLAND has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND , demands judgment for damages, punitive damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT – AGE DISCRIMINATION IN VIOLATION OF
## THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 12201 ET SEQ.

68.     Plaintiff KIRKLAND incorporates the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

69.     KIRKLAND was fifty-two-years-old (52) and qualified for her position with EQUITI when her employment was terminated.

70.     EQUITI and its agents regularly made discriminatory comments to KIRKLAND regarding her age.  For example,

a.      KIRKLAND was often told by her immediate supervisor and human resources that was the oldest of all employees at the Palm Beach Gardens office.

b.      Mr. Dennison stated he believed the company needed to move in a younger direction during a meeting with KIRKLAND.

71.     KIRKLAND suffered damages as a result of EQUITIS 's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

72.     EQUITI willfully violated KIRKLAND's rights under the ADEA and, as a result, is liable for liquidated damages.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, liquidated damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT  III –VIOLATION OF TITLE VII - GENDER DISCRIMINATION

73.     Plaintiff, KIRKLAND adopts and incorporates by reference the allegations in paragraphs 1 to 46 of this Complaint.

74.     KIRKLAND is a member of a protected class of female citizens.

75.     At all times necessary, KIRKLAND was qualified to perform her duties as an Accountant.

76.     During the course of KIRKLAND's employment with EQUITI, KIRKLAND was subjected to a discriminatory, hostile and offensive work environment because of her gender (female), as more fully described in the General Allegations.

77.     The offensive and discriminatory conduct referred to in the General Allegations was offensive to KIRKLAND and would be offensive to a reasonable person.

78.     KIRKLAND was subjected to the conduct referred to in the General Allegations of this Complaint because she is a female.

79.     Her superiors, directed much of the conduct referred to in this Complaint to KIRKLAND.

80.     As a direct and proximate result of the foregoing, KIRKLAND has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

81.     KIRKLAND has suffered damages of an on-going and continuous nature.

82.     As a result of the deprivations of rights at the hands of EQUITI, KIRIKLAND has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT IV -VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT- GENDER DISCRIMINATION

83.     Plaintiff, KIRKLAND adopts and incorporates by reference the allegations in paragraphs 1 to 46 of this Complaint.

84.     At all times material hereto, EQUITI failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

85.     KIRKLAND is a member of a protected class of female citizens.

86.     At all times necessary, KIRKLAND was qualified to perform her duties as an Accountant.

87.     During the course of KIRKLAND's employment with EQUITI, KIRKLAND was subjected to a discriminatory, hostile and offensive work environment because of her gender (female), as more fully described in the General Allegations.

88.     The offensive and discriminatory conduct referred to in the General Allegations was offensive to KIRKLAND and would be offensive to a reasonable person.

89.     KIRKLAND was subjected to the conduct referred to in the General Allegations of this Complaint because she is a female.

90.     Her superiors, directed much of the conduct referred to in this Complaint to KIRKLAND.

91.     As a direct and proximate result of the foregoing, KIRKLAND has suffered and continues to suffer embarrassment, humiliation, emotional distress and economic losses

92.     Any alleged nondiscriminatory reason for this treatment of KIRKLAND by EQUITI is a mere pretext for the actual reason for discriminating against her based on her gender

93.     EQUITI's actions were malicious and were recklessly indifferent to KIRKLAND's rights pursuant to Fla. Stat. § 760.10.

94.     The aforementioned actions of EQUITI were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment

benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT V – RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

95.     Plaintiff KIRKLAND incorporates the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

96.     The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

97.     EQUITI is an "employer" as defined by § 760.09(7) of the Florida Statutes.

98.     KIRKLAND is a fifty-two-year-old female, who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

99.     KIRKLAND engaged in a statutorily protected expression, namely she filed two written complaints—the first on September 29, 2018, and the second on November 16, 2018—against her supervisor for subjecting her to age and gender discrimination and harassment, resulting in a hostile work environment and ultimately her termination.

100.     KIRKLAND also raised concerns over the discriminatory handling of employee benefits, as she was listed as ineligible to participate in the 401K whereas other employee(s) in the same class of employee as she was were provided with said benefits. Additionally, she learned that similarly situated employees were provided free health insurance rather than requiring a percentage contribution. Ms. Phillips had misclassified KIRKLAND as a part-time employee, such that she would never qualify for a 401K package.  KIRKLAND sent emails to Mr. Holmes

16

requesting that this information be changed and to report the discriminatory handling of the benefits.

101.    On November 16, 2018, Ms. Kirkland had an in-person meeting with Mr. Holmes, who traveled to the U.S. office on business.  She again raised concerns about the constant harassment she was experiencing from her immediate supervisor Mr. Dennison.

102.    A causal connection exists between KIRKLAND's complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her termination.

103.    As a direct and proximate result of EQUITI's conduct and its employees' actions, KIRKLAND has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

104.    What is more, the unlawful employment practices complained of above committed by EQUITI were willful, wanton, intentional and with malice or with reckless indifference to KIRKLAND's statutorily protected rights, such that KIRKLAND is entitled to punitive damages.

105.    KIRKLAND has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment

benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT VI – RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED

106.    Plaintiff KIRKLAND incorporates the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

107.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 et seq.

108.    KIRKLAND is a fifty-two-year-old, female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

109.    EQUITI discriminated against KIRKLAND in violation of Title VII of the Civil Rights Act when EQUITI and its agents or employees mistreated KIRKLAND after she filed two written complaints—the first on September 29, 2018, and the second on November 16, 2018— against her supervisor for subjecting her to age and gender discrimination and harassment, resulting in a hostile work environment and ultimately her termination.

110.    KIRKLAND also raised concerns over the discriminatory handling of employee benefits, as she was listed as ineligible to participate in the 401K whereas other employee(s) in the same class of employee as she was were provided with said benefits. Additionally, she learned that similarly situated employees were provided free health insurance rather than requiring a percentage contribution. Ms. Phillips had misclassified KIRKLAND as a part-time employee, such that she would never qualify for a 401K package. KIRKLAND sent emails to Mr. Holmes

requesting that this information be changed and to report the discriminatory handling of the benefits.

111.    On November 16, 2018, Ms. Kirkland had an in-person meeting with Mr. Holmes, who traveled to the U.S. office on business.  She again raised concerns about the constant harassment she was experiencing from her immediate supervisor Mr. Dennison.

112.    What is more, EQUITI violated Title VII of the Civil Rights Act when it terminated KIRKLAND following her complaints of harassment and hostile work environment resulting from age and gender discrimination.

113.    A causal connection exists between KIRKLAND's repeated complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her termination.

114.    As a direct and proximate result of EQUITI's conduct and its employees' actions, KIRKLAND has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, and life insurance all of which she would have continued to receive had she not been unlawfully terminated.

115.    What is more, the unlawful employment practices complained of above committed by EQUITI were willful, wanton, intentional and with malice or with reckless indifference to KIRKLANDS's statutorily protected rights, such that KIRKLAND is entitled to punitive damages.

116.    KIRKLAND has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII of the Civil Rights Act and is required to pay her attorney a reasonable fee for services rendered in this cause.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and requests injunctive relief,

including, but not limited to, back pay, front pay, reinstatement of employment, employment

benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all

other relief, legal and equitable, that the Court deems appropriate.

### COUNT VII - HOSTILE WORK ENVIRONMENT BASED ON GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED

117.    KIRKLAND realleges and incorporates herein all of the allegations set forth in

paragraphs 1-46 above as if set forth herein.

118.    KIRKLAND brings this action under 42 U.S.C. Sect. 2000(e), et seq. As set forth

in the paragraphs herein, EQUITY harassed KIRKLAND thereby subjecting her to a hostile work

environment because of her gender (female) in violation of Section 703(a) of Title VII, 42 U.S.C

§ 2000e-2.

119.    To establish a prima facie case of hostile work environment and harassment under

Title VII, a plaintiff must prove that: (1) she belongs to protected group, (2) she has been subject

to unwelcome harassment, (3) the harassment was based on protected characteristic of plaintiff,

(4) the harassment was sufficiently severe or pervasive to alter terms and conditions of

employment and create a discriminatorily abusive working environment, and (5) the employer is

responsible for such environment under a theory of vicarious or direct liability. Here, KIRKLAND

satisfies all five elements.

120.    KIRKLAND is a female; therefore, she falls within a protected class.

121.    As set forth above, KIRKLAND has been the subject of unwelcome harassment

based on her gender and the harassment was sufficiently severe and pervasive to alter the terms

and conditions of her employment with EQUITI and create a discriminatory harassing and hostile

work environment. The conduct was committed in large part by EQUITI's US Manager; therefore,

EQUITI is responsible for the hostile environment.

122. This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and KIRKLAND perceived it as abusive.

123. The harassment occurred frequently, was severe and humiliating and unreasonably interfered with KIRKLAND's ability to perform her job as an accountant.

124. EQUITI is liable because, as set forth above, their supervisory personnel, Mr. Dennison was responsible for the discriminatory actions complained of, which actions were in violation of law, and no corrective action to stop and/or prevent it was undertaken by them, including the human resources department.

125. As a direct and proximate result of the actions or omissions of EQUITI, KIRKLAND has sustained those damages set forth above, all of which she is entitled to recover by law.

126. As a result of the deprivations of rights at the hands of EQUITI, KIRIKLAND has been forced to hire an attorney and pay him a reasonable fee, which he is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT VIII - HOSTILE WORK ENVIRONMENT BASED ON AGE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED

127. KIRKLAND realleges and incorporates herein all of the allegations set forth in paragraphs 1-46 above as if set forth herein.

128.     KIRKLAND brings this action under 42 U.S.C. Sect. 2000(e), et seq. As set forth in the paragraphs herein, EQUITY harassed KIRKLAND thereby subjecting her to a hostile work environment because of her age (52) in violation of Section 703(a) of Title VII, 42 U.S.C § 2000e-2.

129.     To establish a prima facie case of hostile work environment and harassment under Title VII, a plaintiff must prove that: (1) she belongs to protected group, (2) she has been subject to unwelcome harassment, (3) the harassment was based on protected characteristic of plaintiff, (4) the harassment was sufficiently severe or pervasive to alter terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability. Here, KIRKLAND satisfies all five elements.

130.     KIRKLAND is Fifty-Two years old; therefore, she falls within a protected class, namely individuals over forty.

131.     As set forth above, KIRKLAND has been the subject of unwelcome harassment based on her age and the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment with EQUITI and create a discriminatory harassing and hostile work environment. The conduct was committed in large part by EQUITI's US Manager; therefore, EQUITI is responsible for the hostile environment.

132.     This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and KIRKLAND perceived it as abusive.

133.     The harassment occurred frequently, was severe and humiliating and unreasonably interfered with KIRKLAND's ability to perform her job as an accountant.

134.     EQUITI is liable because, as set forth above, their supervisory personnel, Mr. Dennison was responsible for the discriminatory actions complained of, which actions were in violation of law, and no corrective action to stop and/or prevent it was undertaken by them, including the human resources department.

135.     As a direct and proximate result of the actions or omissions of EQUITI, KIRKLAND has sustained those damages set forth above, all of which she is entitled to recover by law.

136.     As a result of the deprivations of rights at the hands of EQUITI, KIRIKLAND has been forced to hire an attorney and pay him a reasonable fee, which he is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT IX - HOSTILE WORK ENVIRONMENT BASED ON GENDER IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

137.     KIRKLAND realleges and incorporates herein all of the allegations set forth in paragraphs 1-46 above as if set forth herein.

138.     This is an action for damages and injunctive relief brought pursuant to the Florida Civil Rights Act. Fla.Stat.Ch. 760.

139.     KIRKLAND belongs to a protected class within the meaning of the Florida Civil Rights Act, Fla.Stat.Ch. 760, because she is a female.

140.    As set forth above, KIRKLAND has been the subject of unwelcome harassment based on her gender and the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment with EQUITI and create a discriminatory harassing and hostile work environment. The conduct was committed in large part by EQUITI's US Manager; therefore, EQUITI is responsible for the hostile environment.

141.    This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and KIRKLAND perceived it as abusive.

142.    The harassment occurred frequently, was severe and humiliating and unreasonably interfered with KIRKLAND's ability to perform her job as an accountant.

143.    EQUITI is liable because, as set forth above, their supervisory personnel, Mr. Dennison was responsible for the discriminatory actions complained of, which actions were in violation of law, and no corrective action to stop and/or prevent it was undertaken by them, including the human resources department.

144.    As a direct and proximate result of the actions or omissions of EQUITI, KIRKLAND has sustained those damages set forth above, all of which she is entitled to recover by law.

145.    As a direct and proximate result of the actions or omissions of EQUITI to KIRKLAND, KIRKLAND has sustained those damages set forth above, all of which she is entitled to recover under the terms of the Florida Civil Rights Act of 1992 as established at Florida Statutes Chapter 760, et.seq.

146.    As a result of the deprivations of rights at the hands of EQUITI, KIRKLAND has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to the Florida Civil Rights Act, Fla.Stat.Ch. 760.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT X - HOSTILE WORK ENVIRONMENT BASED ON AGE IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

147.    KIRKLAND realleges and incorporates herein all of the allegations set forth in paragraphs 1-46 above as if set forth herein.

148.    This is an action for damages and injunctive relief brought pursuant to the Florida Civil Rights Act. Fla.Stat.Ch. 760.

149.    KIRKLAND belongs to a protected class within the meaning of the Florida Civil Rights Act, Fla.Stat.Ch. 760, because she is a fifty-two years of age.

150.    As set forth above, KIRKLAND has been the subject of unwelcome harassment based on her age and the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment with EQUITI and create a discriminatory harassing and hostile work environment. The conduct was committed in large part by EQUITI's US Manager; therefore, EQUITI is responsible for the hostile environment.

151.    This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and KIRKLAND perceived it as abusive.

152.    The harassment occurred frequently, was severe and humiliating and unreasonably interfered with KIRKLAND's ability to perform her job as an accountant.

153.    EQUITI is liable because, as set forth above, their supervisory personnel, Mr. Dennison was responsible for the discriminatory actions complained of, which actions were in

violation of law, and no corrective action to stop and/or prevent it was undertaken by them, including the human resources department.

154.    As a direct and proximate result of the actions or omissions of EQUITI, KIRKLAND has sustained those damages set forth above, all of which she is entitled to recover by law.

155.    As a direct and proximate result of the actions or omissions of EQUITI to KIRKLAND, KIRKLAND has sustained those damages set forth above, all of which she is entitled to recover under the terms of the Florida Civil Rights Act of 1992 as established at Florida Statutes Chapter 760, et.seq.

156.    As a result of the deprivations of rights at the hands of EQUITI, KIRKLAND has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to the Florida Civil Rights Act, Fla.Stat.Ch. 760.

WHEREFORE, Plaintiff, KIMBERLY MICHELE KIRKLAND, demands judgment for damages, interest, costs, attorney's fees, and requests injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of Defendant from any further discrimination against Plaintiff, and for all other relief, legal and equitable, that the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff, KIMBERLY MICHELE KIRKLAND demands a trial by jury on all issues so triable.

Dated December 23, 2019.

**The Law Office of Gregory S. Sconzo, P.A.**
5080 PGA Boulevard, Suite 213
Palm Beach Gardens, FL 33408
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
ANDREA C. SCONZO, ESQUIRE
Florida Bar No.: 0105578
**Service Email:** sconzolaw@gmail.com
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** andrea@sconzolawoffice.com